J-S28021-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| MARY JANE SPOLAR AND GREGORY SPOLAR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellants | : | |
| | : | |
| v. | : | |
| | : | No. 119 MDA 2020 |
| PRICE CHOPPER OPERATING CO. OF PA, AND GOLUB CORP., T/A PRICE CHOPPER AND PRICE CHOPPER STORE NO. 185, AND MONTROSE PARTNERS OF ALBANY, LP C/O SCHUYLER COMPANIES AND/OR SCHUYLER REAL ESTATE, AND MATT HOLBROOK T/A HOLBROOK LAWNCARE | : : : : : : : : : : | |

Appeal from the Order Entered January 8, 2020
In the Court of Common Pleas of Susquehanna County Civil Division at
No(s):  2017-00758

BEFORE:  BOWES, J., OLSON, J., and MUSMANNO, J.

MEMORANDUM BY OLSON, J.:                **FILED AUGUST 26, 2020**

Appellants, Mary Jane Spolar[1] and Gregory Spolar, appeal from the

January 8, 2020 order granting summary judgment in favor of Price Chopper

Operating Co. of PA and Golub Corp., t/a Price Chopper and Price Chopper

Store No. 185 (collectively "Golub"), Montrose Partners of Albany, LP c/o

Schuyler Companies and/or Schuyler Real Estate (collectively "Montrose

_____

[1] We note that the cover page of Appellants' brief incorrectly identified Mary
Jane Spolar as "Mary Ann Spolar."

Partners"), and Matt Holbrook t/a Holbrook Lawncare (collectively

"Holbrook"). We affirm.

The trial court summarized the factual history as follows:

The Price Chopper grocery store in Montrose, Pennsylvania[,] opens for customers at [6:00 a.m.] Holbrook has a contract with Montrose Partners to perform snow removal at the Price Chopper [grocery] store in Montrose. On February 16, 2016, there had been some precipitation in Montrose and Holbrook put salt down on the parking lot of the Price Chopper [grocery s]tore at 6:18 p.m. On the morning of February 17, 2016, Holbrook arrived at the Price Chopper [grocery] store around [7:00 a.m.] with his wife, April, to check [the] conditions of the parking lot. When they arrived, there were a few cars in the parking lot. They walked the parking lot and determined that no salt was needed. After checking the parking lot, Holbrook and his wife went to breakfast.

[Appellants live eight] miles [] from the Price Chopper grocery store. At around 6:30 a.m. on February 17[, 2016,], Mary Jane Spolar [("Spolar")] observed a wintry[-]mix at her house. Spolar left her [house] at close to 7:30 a.m. to drive her husband to physical therapy in Montrose. It was not snowing at that time but when she got in her car at her house, there was ice on the ground. After Spolar dropped her husband off for his physical therapy, she drove to the Price Chopper [grocery] store. Spolar arrived in the Price Chopper [grocery store] parking lot around 7:45 a.m. [Spolar stated that when she drove her car into the grocery store parking lot, she noticed] "[t]he whole parking lot was wet." Spolar observed the "[assistant store] manager[,]" who was in the front of the [grocery] store about five feet into the parking lot[,] rubbing his foot on the pavement "checking for ice." Spolar pulled into a parking spot and when she stepped out of her car with her left foot, her left foot slid on ice and she fell out of her vehicle. Her tailbone struck the ground. Spolar [fell] on ice [that] was under her car and extended to the next parking spot. The ice was "clear" and "smooth" and looked "wet." While she was on the ground, she saw what looked like tire tracks in the ice [that was] in the parking spots [near her parking spot but further away from the grocery store entrance, and she said it] looked like frost [coating] that ice. Spolar got up, got back in her car[,] and moved her vehicle to another parking spot where there was no ice. She went into the [grocery] store and reported her fall to a cashier[,]

who [notified] the [assistant store] manager. After Spolar completed a report of her fall with the [assistant store] manager, the [assistant store] manager helped Spolar to her car. Spolar then picked up her husband[,] and they went to the hospital.

Patrick Banas [("Banas")] was the assistant store manager for the Price Chopper [grocery] store in Montrose on February 17, 2016. After Spolar reported her fall to him, Banas inspected the area in the parking lot where Spolar [] slipped. There was black ice in the parking space [that] was smooth - not rough - and was maybe [two] feet in size. Banas called Holbrook and reported that someone [fell on ice in the parking lot]. After the phone call, Holbrook and his wife returned to the Price Chopper [grocery] store to check conditions. When Holbrook and his wife got to the parking lot, they observed that conditions [] changed and there was ice throughout the Price Chopper [grocery store] parking lot. [Holbrook and his wife] left to get their salt truck and when they got back to the store, Holbrook [applied salt] throughout the parking lot at around 8:30 a.m. After they completed salting the Price Chopper [grocery store] parking lot, [Holbrook and his wife] placed salt on the parking lots of other properties in Montrose [that] they were responsible for [servicing,] including Tractor Supply, Visions, Storeroom Solutions, Tim Carpenter, Rite Aid, McDonalds, and several others.

Trial Court Opinion, 1/8/20, at 4-6 (record citations omitted).

On June 16, 2017, Appellants filed a complaint against Golub, Montrose Partners, and Holbrook as a result of the injuries Spolar suffered in the Price Chopper grocery store parking lot on February 17, 2016. In their complaint, Appellants alleged, *inter alia*, that Golub and Montrose Partners were negligent in permitting ice to exist in the parking lot while the grocery store was open for business to invitees, such as Spolar, and that Holbrook was negligent in his treatment of the parking lot to prevent the formation of ice. Spolar's husband also brought a loss of consortium cause of action. Appellants filed

an amended complaint on August 1, 2017, again raising causes of action for negligence and loss of consortium.

On October 11, 2019, Golub filed a motion for summary judgment, arguing, *inter alia*, that after the completion of discovery, Appellants were "unable to establish that precipitation was allowed to accumulate in an unreasonable form of hills or ridges such that it would give rise to liability on the part of" Golub.  **See** Brief in Support of [Golub's] Motion for Summary Judgment, 10/11/19, at 6.  On October 25, 2019, Montrose Partners and Holbrook jointly filed a motion for summary judgment, arguing that Spolar's testimony "negated the existence of ice [that] had been permitted to form 'ridges and elevations' and, therefore, precluded liability as a matter of law."  **See** [Montrose Partners and Holbrook's] Brief in Support of Motion for Summary Judgment, 10/25/19, at 5-6.  Montrose Partners and Holbrook also argued that "the patch of ice upon which [Spolar] allegedly fell was clearly visible to those who observed it after the alleged fall[, and Spolar] was placed on notice of the potential risk by virtue of her seeing the [assistant] store manager rubbing his foot along the surface of the parking lot checking for ice."  *Id.* at 6.  Appellants filed responses to the motions for summary judgment, and on December 2, 2019, the trial court entertained argument on the matter.  On January 8, 2020, the trial court granted the motions for summary judgment.  This appeal followed.[2]

_____

[2] Appellants and the trial court complied with Pa.R.A.P. 1925.

Appellants raise the following issues for our review:

1. Did the honorable trial court err in granting summary judgment as a result of the application of the "hills and ridges" doctrine where [Spolar] suffered a slip and fall on a "patch of ice", and not as a result of generally slippery conditions, which would be excluded from the doctrine?

2. Did the honorable trial court err in failing to resolve all doubts, or make inferences, as to the existence of a genuine issue of material fact in favor of the non[-]moving party pursuant to Pennsylvania Rule of Civil Procedure 1035?

3. Did the honorable trial court err [by] attempting to resolve issues of fact, including "generally slippery conditions", in resolution of [motions] for summary judgment?

4. Did the honorable trial court err in failing to hold [Golub, Montrose Partners, and Holbrook] to the high standard of care owed to a business invitee[,] such as [Spolar]?

Appellants' Brief at 1 (extraneous capitalization omitted).

Appellants' issues, in sum, challenge the trial court's grant of summary judgment, for which our standard of review and scope of review are well-settled.

> Our scope of review of summary judgment orders is plenary. We apply the same standard as the trial court, reviewing all the evidence of record to determine whether there exists a genuine issue of material fact. We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law will summary judgment be entered.
>
> Motions for summary judgment necessarily and directly implicate the plaintiffs' proof of the elements of their cause of action. Summary judgment is proper if, after the completion of discovery relevant to the motion, including the production of expert reports,

- 5 -

an adverse party who will bear the burden of proof at trial [] failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury. Thus[,] a record that supports summary judgment will either (1) show the material facts are undisputed or (2) contain insufficient evidence of facts to make out a *prima facie* cause of action or defense and, therefore, there is no issue to be submitted to the jury. Upon appellate review[,] we are not bound by the trial court's conclusions of law, but may reach our own conclusions. [This] Court may disturb the trial court's order only upon an error of law or an abuse of discretion.

***Collins v. Philadelphia Suburban Dev. Corp.***, 179 A.3d 69, 73 (Pa. Super. 2018) (citation, ellipses, and original brackets omitted).

In a cause of action based upon negligence, the plaintiff must prove: (1) the defendant owed a duty of care to the plaintiff, (2) that duty was breached, (3) the breach resulted in the plaintiff's injury, and (4) the plaintiff suffered an actual loss or damages. ***Id.*** (citation omitted). A land possessor is liable for the injury sustained by the plaintiff if

the land possessor knows of or reasonably should have known of the condition and the condition involves an unreasonable risk of harm, the [land] possessor should expect that the invitee will not realize it or will fail to protect himself [or herself] against it, and the [land] possessor fails to exercise reasonable care to protect the invitee against the danger.

***Id.*** at 74 (citation omitted). "An invitee must present evidence proving either the [land possessor] had a hand in creating the harmful condition, or [the land possessor] had actual or constructive notice of such condition." ***Id.*** (citation, original brackets, and original quotation marks omitted).

Pennsylvania courts created an exception to liability known as the hills and ridges doctrine that "is a refinement [of] or clarification of the duty owed

- 6 -

by a [land] possessor [] and is applicable to a single type of dangerous condition, *i.e.*, ice and snow." **Morin v. Traveler's Rest Motel, Inc.**, 704 A.2d 1085, 1087 (Pa. Super. 1997) (citation omitted), *appeal denied*, 723 A.2d 1025 (Pa. 1998). "The hills and ridges doctrine is a long[-]standing and well[-]entrenched legal principle that protects an owner or occupier of land from liability for generally slippery conditions resulting from ice and snow where the owner has not permitted the ice and snow to unreasonably accumulate in ridges or elevations." **Morin**, 704 A.2d at 1087. This doctrine has been extended to situations in which a business invitee falls on an ice-covered parking lot. **Id.** at 1088.

The hills and ridges doctrine only applies when an entirely natural accumulation of snow or ice following a recent meteorological event causes the plaintiff to sustain an injury.[3] **Id.**; **see also Collins**, 179 A.3d at 74 (stating, "the hills and ridges doctrine may be applied only in cases where the snow and ice complained of are the result of an entirely natural accumulation following a recent snowfall").

> In order to recover for a fall on an ice or snow covered surface, a plaintiff must show:
>
>> (1) that snow and ice [] accumulated on the [surface] in ridges or elevations of such size and character as to unreasonably obstruct travel and constitute a danger to

---

[3] "The rationale for this doctrine has been explained as follows: to require that one's walks be always free of ice and snow would be to impose an impossible burden in view of the climatic conditions in this hemisphere." **Morin**, 704 A.2d at 1087 (citation omitted).

pedestrians travelling thereon; (2) that the property owner had notice, either actual or constructive, of the existence of such condition; and (3) that it was the dangerous accumulation of snow and ice which caused the plaintiff to fall.

This Court [] further opined that "the only duty upon the property owner or tenant is to act within a reasonable time after notice to remove the snow and ice when it is in a dangerous condition."

*Collins*, 179 A.3d at 74 (original brackets omitted), *citing* *Biernacki v. Presque Isle Condominiums Unit Owners Ass'n, Inc.*, 828 A.2d 1114, 1117 (Pa. Super. 2003).

"[P]roof of hills and ridges is necessary only when it appears that the [injury] occurred at a time when general slippery conditions prevailed in the community as a result of recent precipitation." *Williams v. Shultz*, 240 A.2d 812, 813 (Pa. 1968). Generally slippery conditions are not prevalent and proof of hills and ridges in the accumulation of ice or snow need not be established where a specific, localized patch of ice exists on a parking lot or sidewalk, otherwise free of ice and snow. *See Tonik v. Apex Garages, Inc.*, 275 A.2d 296, 298 (Pa. 1971) (stating, "[w]here [] a specific, localized patch of ice exists on a sidewalk otherwise free of ice and snow, the existence of 'hills and ridges' need not be established").

Here, the trial court determined that no genuine issue existed as to the material fact that generally slippery conditions prevailed in the Montrose community at the time Spolar sustained her injury. Trial Court Opinion, 1/8/20, at 9. Appellants were required, the trial court concluded, to prove that ice accumulated in hills and ridges in the Price Chopper grocery store

- 8 -

parking lot of such size and character as to unreasonably obstruct travel and constitute a danger to Spolar. *Id.* In reaching its conclusion, the trial court stated,

> [Holbrook, and his wife, April Holbrook,] testified that there had been precipitation the night before Spolar's fall. Spolar [] provided testimony that on the day of her fall, February 17[,] 2016, a wintry[-]mix occurred around 6:30 a.m. at her [house eight] miles from Montrose[. Spolar stated that] she [] observed ice near her vehicle prior to her departure [to Montrose]. Furthermore, [Holbrook and April Holbrook] provided evidence that the conditions on February 17, 2016[,] subsequent to [Spolar's] fall[,] required them to treat the parking lots of not just Price Chopper [grocery store] but several other businesses as well. Therefore, it is undisputed that [] general slippery [conditions prevailed] in the community at the time of Spolar's slip and fall in the Price Chopper [grocery store p]arking lot. The hills and ridges doctrine is applicable in this case.
>
> In order to overcome the hills and ridges doctrine, [Appellants] must establish all three elements under the hills and ridges doctrine, including the first element - "that snow and ice [] accumulated on the [parking lot surface] in ridges or elevations of such size and character as to unreasonably obstruct travel and constitute a danger to pedestrians travelling thereon."

*Id.* In determining that Appellants "failed to proffer any evidence of hills and ridges in the ice, a prerequisite in order to overcome the hills and ridges doctrine[,]" the trial court found that

> Spolar admitted that at the time of her fall, the parking lot looked "wet" and that the ice was clear and smooth. She stated that it extended beyond her parking space into the parking spaces adjacent to her. Banas described the ice in the parking lot as "black ice" [that] was smooth [and] not rough. April Holbrook testified that the ice was throughout the parking lot when she and her husband returned after Spolar fell.

- 9 -

*Id.* at 11. Therefore, "[n]o evidence was offered describing the ice as having hills and ridges." *Id.*

In their first three issues, Appellants argue, *inter alia*, that the trial court erred in determining that no genuine issue of material fact existed as to whether generally slippery conditions prevailed in the Montrose area at the time of Spolar's fall. Appellants' Brief at 13. Appellants contend the patch of ice upon which Spolar stepped and fell was an isolated patch of ice and, therefore, Appellants were not required to demonstrate that ice accumulated in hills and ridges in the parking lot. *Id.* at 11-13. Appellants aver that April Holbrook stated "that she found only 'spotty ice' in the parking lot" after Spolar's fall and that this testimony demonstrated an isolated patch of ice and not generally slippery conditions prevailing in the area. *Id.* at 13. Appellants assert that Golub, Montrose Partners, and Holbrook only needed actual or constructive notice of the dangerous icy condition. *Id.* at 14. Appellants argue that when Spolar observed Banas rubbing his foot on the parking lot surface as she was entering the parking lot, she understood Banas to be checking for ice. *Id.* This evidence, Appellants assert, sufficiently demonstrated Golub, Montrose Partners, and Holbrook had constructive notice of the dangerous icy condition that caused Spolar's injury. *Id.* at 14. Alternatively, Appellants argue that the icy condition was not the result of an entirely natural accumulation but, rather, the result of Holbrook's plowing and salting the parking lot on the evening prior to the fall, which caused "a melt and refreeze condition" to occur. *Id.* at 15.

A review of the record demonstrates that prior to Spolar leaving her house and driving to the Price Chopper grocery store, which is a distance of approximately eight miles, there was a wintry-mix[4] of weather. Spolar Deposition Transcript, 2/20/18, at 24. Spolar recalled ice on the ground as she walked from her house to her vehicle. *Id.* at 32. Spolar remarked that upon arriving at the Price Chopper grocery store, the entire parking lot surface appeared wet. *Id.* at 28, 64. Spolar acknowledged that the air temperature was below freezing at the time she pulled her vehicle into the grocery store parking lot. *Id.* at 27.

Holbrook, upon inspecting the Price Chopper grocery store parking lot with April Holbrook at 7:00 a.m. on February 17, 2016, and prior to Spolar's arrival, determined that the parking lot was "good" and did not need plowing or an application of salt. Holbrook Deposition Transcript, 2/20/18, at 18. Holbrook recalled that the air temperature was below freezing at the time of his inspection. *Id.* at 36. April Holbrook testified that the condition of the parking lot changed on the day of Spolar's fall between the first time she and Holbrook inspected the parking lot at 7:00 a.m. and the second time they inspected the parking lot at 8:30 a.m., after receiving notice of Spolar's fall. April Holbrook's Deposition Transcript, 2/20/18, at 12. April Holbrook stated that upon the second inspection, there was spotty ice throughout the parking

---

[4] Spolar defined a "wintry-mix" to mean a mixture of snow, sleet, and rain. Spolar Deposition Transcript, 2/20/18, at 25.

lot, a fact that Appellants acknowledge. *Id.*; *see also* Appellants' Brief at 13 (stating, "April Holbrook testified that she found only 'spotty ice' in the parking area. Other than some spotty ice, the parking lot was clear." (record citations omitted)). After learning of Spolar's fall and upon returning to the Price Chopper grocery store parking lot, Holbrook applied salt to the parking lot and then proceeded to do the same at several other properties in the immediate area. Holbrook Deposition Transcript, 2/20/18, at 18; *see also* April Holbrook Deposition Transcript, 2/20/18, at 14.

In viewing the evidence in a light most favorable to Appellants, as the non-moving party, the evidence demonstrates that a wintry-mix of precipitation fell in the Montrose area shortly before Spolar's fall, causing icy conditions on the ground. Prior to Spolar arriving at the Price Chopper grocery store parking lot, the parking lot surface was free of ice and did not require an application of a salt agent to melt the ice. Upon arriving at the Price Chopper grocery store, Spolar described the parking lot as "wet" and the air temperature to be below freezing. At the time of Spolar's fall, the parking lot had icy conditions, in spots, which required treatment with a salt agent. Moreover, the evidence demonstrates that after Spolar's fall, Holbrook applied a salt agent to treat and prevent ice formation on other parking lot surfaces in the immediate area indicating icy conditions in other parking lots.[5]

_____

[5] Holbrook's business practice, as documented by his daily logs, was to inspect each property he serviced daily and provide the necessary service, *i.e.* plowing

Appellants argue that because Spolar fell on a "patch of ice," her fall was caused by a specific, localized condition and that generally slippery conditions did not exist since the parking lot surface had "only a couple spots of ice" on it. Appellants' Brief at 13. Appellants contend, therefore, that the hills and ridges doctrine does not apply. *Id.* Appellants, in so arguing, misapplied the hills and ridges doctrine. To avoid imposing insurmountable burdens on land possessors, the hills and ridges doctrine applies whenever generally slippery conditions prevail in a community after a recent meteorological event that results in an entirely natural accumulation of snow or ice. *Morin*, 704 A.2d at 1087. Application of this doctrine does not turn on where a plaintiff falls, as all falls, of this nature, occur on a small patch of ice or snow under foot. Rather, the application of the doctrine turns on whether there was a recent meteorological event resulting in snow or ice accumulation and what conditions were prevalent in the area after such event. While heavy precipitation and snowfall were not established in the case *sub judice*, the record demonstrates that "spotty" patches of ice were present throughout the Price Chopper grocery store parking lot, consistent with the time of year and Spolar's observations of a wintery-mix of weather in the area, air temperatures below freezing, and the "wet" appearance of the parking lot.

---

and salting, based upon the needs of the property and the weather conditions. Holbrook's Deposition Testimony, 2/20/18, at 15, 23; ***see also id.*** at Exhibit 2. In other words, if the property had an accumulation of snow, he plowed, and if the property had icy conditions, he salted.

Therefore, no genuine issue of material fact existed as to the presence of generally slippery conditions prevailing in the Montrose area prior to Spolar's fall and subsequent injury. Consequently, Appellants were required to satisfy the three requirements, as discussed *supra*, in order to overcome the hills and ridges doctrine.[6] *See Collins*, 179 A.3d at 74.

In order to overcome the hills and ridges doctrine and recover for Spolar's injuries, Appellants needed to demonstrate, *inter alia*, that the ice accumulated on the Price Chopper grocery store parking lot in ridges or elevations of such size and character as to unreasonably obstruct travel and constitute a danger to pedestrians travelling thereon. *Id.* Spolar stated that the ice, which caused her to fall, was "clear" and "smooth" and appeared to have a white coating of frost. Spolar Deposition Transcript, 2/20/18, at 69, 71. Spolar stated she observed tire marks in the frost-covered ice but that the frost accumulation on the ice had a thickness of less than a quarter of an

_____

[6] We find no merit to Appellants' alternative argument that the ice was not an entirely natural accumulation of ice following a recent meteorological event but, rather, caused by Holbrook's plowing and salting of the parking lot on the evening prior to Spolar's fall. In viewing the evidence in the light most favorable to Appellants, as the non-moving party, the evidence demonstrates that the ice was the result of a wintry-mix of weather in the area and the below-freezing air temperature on the morning of Spolar's fall. Appellants failed to present evidence that demonstrated the parking lot surface had been treated for ice between the time of Holbrook's first inspection, when no ice was found, and the second inspection, where the parking lot had spotty ice. Spolar stated that when observing the ice after her fall, the ice did not have salt on it but, rather, appeared to have a covering of frost. Spolar Deposition Transcript, 2/20/18, at 72.

inch. *Id.* at 76. After Spolar's fall, Banas, upon inspecting the parking lot surface where Spolar fell, described the ice as "black ice."[7] Banas Deposition Transcript, 2/20/18, at 17.

In viewing the evidence in the light most favorable to Appellants, as the non-moving party, the evidence demonstrated that, on the morning of Spolar's fall, the ice was clear and smooth and that the frost on top of the ice was less than a quarter of an inch in thickness. The thin layer of ice covering the surface of the Price Chopper grocery store parking lot, otherwise known as "black ice", on the morning of Spolar's fall was not an accumulation of ice sufficient to overcome the hills and ridges doctrine. Therefore, Appellants failed to demonstrate the existence of a genuine issue of material fact that the ice accumulated on the parking lot in ridges or elevations of such size and character as to unreasonably obstruct travel and constitute a danger to pedestrians travelling thereon.[8]

---

[7] The term "black ice" is defined as "a nearly transparent film of ice on a dark surface (such as a paved road or a body of water) that is difficult to see[.]" *See* https://www.merriam-webster.com/dictionary/black%20ice (last visited July 15, 2020); *see also Morin*, 704 A.2d at 1087 n.1 (describing "black ice" as "a sheet of virtually transparent ice").

[8] Moreover, although Spolar's observation of Banas, as she entered the Price Chopper grocery store parking lot, led her to believe Banas was checking for ice on the parking lot surface approximately five feet from the grocery store entrance, Appellants failed to present any evidence that Banas discovered ice or knew about the spotty ice in the parking lot. Spolar Deposition Transcript, 2/20/18, at 70, 74. Spolar stated that she did not see anyone treating icy conditions in the parking lot with salt prior to her fall. *Id.* at 67.

Based upon a review of the record, we discern no error of law or abuse of discretion in the trial court's order granting summary judgment in favor of Golub, Montrose Partners, and Holbrook. [9]

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 08/26/2020

---

[9] Appellants, in their fourth issue, argue Golub, Montrose Partners, and Holbrook had a duty to inspect the parking lot to ascertain its dangerous condition and make the parking lot reasonably safe for Spolar. Appellants' Brief at 21. Appellants assert that Spolar, as a business invitee at the Price Chopper grocery store, was owed a higher duty of care and that the hills and ridges doctrine did not preclude liability. *Id.* 20-22. We reiterate that the hills and ridges doctrine is applicable to business invitees who sustain injury on business property surfaces, such as a parking lot, that is covered by snow or ice. *See Morin*, 704 A.2d at 1088, *relying on **Wentz v. Pennswood Apartments**, 518 A.2d 314 (Pa. Super. 1986), *appeal denied*, 527 A.2d 545 (Pa. 1987). To hold that the hills and ridges doctrine is not applicable to business invitees would impose an impossible burden on business land possessors, business tenants, and third-party agents responsible for snow and ice removal on business properties in view of the unpredictable climatic conditions that occur within the Commonwealth of Pennsylvania. Therefore, Appellants' issue is without merit.